**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Fernando Ray White,<br><br>　　　　Defendant. | No. CR-21-00766-001-PHX-DJH<br><br>**ORDER** |

Defendant Fernando Ray White ("the Defendant") has filed a "Motion to Dismiss Indictment or, in the Alternative, for a Lost or Destroyed Evidence Jury Instruction" (Doc. 163).[1] The Unites States of America ("the Government") has filed a Response (Doc. 188). The Court must decide whether the Government failed to preserve surveillance footage from a Circle K gas station as evidence in this matter. The Court denies the Defendant's Motion because the Government made good faith attempts to obtain the surveillance footage and its loss does not prejudice the Defendant.

**I.　Background**

On September 21, 2021, the Defendant was indicted with the following Counts:

　　i.　Count 1 for First-Degree Murder;

　　ii.　Count 2 for Assault with a Dangerous Weapon; and

---

[1] The Defendant requested oral argument and an evidentiary hearing on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument and an evidentiary hearing.

iii. Count 3 for Use of a Firearm During a Crime of Violence

(Doc. 1). On December 9, 2019, the Defendant allegedly shot and killed the victim. (Docs. 163 at 2; 188 at 2). The day after, on December 10, 2019, the Defendant, Susanna Gomez ("Gomez"), Deanna Juan ("Juan") and Sage Jones ("Jones") are alleged to have driven to a Circle K gas station in Chandler, Arizona. (Docs. 163 at 2; 188 at 3). Gomez purportedly entered the Circle K; hid in the stockroom with permission from the gas station attendant, Sabrina Sanchez ("Sanchez"); and waited there until the Defendant and the other witnesses drove away. (*Id*.) Gomez later reported the incident to the Gila River Police Department ("GRPD"). (Doc. 188 at 3).

On December 11, 2019, Sanchez described her interaction with Gomez in an interview with GRPD. (*Id*.) The Government represents that Sanchez and GRPD Officer Boyd then watched the Circle K surveillance footage from December 10, 2019 (the "Footage"), which confirmed Sanchez's recount of her interaction with Gomez. (*Id*. at 3–4).

The Government maintains it made two attempts to obtain the Footage. It states its first attempt through Officer Boyd was unsuccessful because "the burner at the Circle K was broken and the manager was unable to burn a copy for Officer Boyd." (*Id*. at 4). It further states that its second attempt through prosecutorial investigators was unsuccessful because by that point, the Footage was erased due to Circle K's practice of erasing and recording over surveillance footage every thirty days. (*Id*.)

II. **Discussion**

The Defendant argues his indictment should be dismissed because the Government failed to preserve the Footage as evidence, resulting in a violation of the Defendant's right to access the evidence, right to present a complete defense, right to a fair trial, and rights guaranteed under the Due Process Clause of the Fifth Amendment. (Doc. 163 at 1). Alternatively, the Defendant urges the Court to instruct the jury that the Government intentionally failed to preserve the Footage and that the jury may infer that the footage was unfavorable to the Government. (*Id*. at 8). The Government opposes, arguing it did not

- 2 -

1. act in bad faith; there is evidence available that is comparable to the contents of the Footage; and that loss of the Footage is only prejudicial to the Government, not the Defendant. (Doc. 188 at 6–12). The Court agrees with the Government.

### A. Motion to Dismiss the Indictment

The Court will first consider whether the Defendant has met his burden to dismiss the indictment on constitutional grounds.

### 1. Legal Standard

"[T]he government violates [a] defendant's right to due process if the unavailable evidence possessed 'exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)). If a defendant's constitutional rights are violated in this manner, it may result in dismissal of the indictment. *See e.g., United States v. Zaragoza-Moreira*, 780 F.3d 971, 982 (9th Cir. 2015).

Two elements are required in order for destruction of evidence to rise to the level of constitutional violations. *See United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). First, the defendant must demonstrate that the government "acted in bad faith in failing to preserve the potentially useful evidence." *Cooper*, 983 F.2d at 931 (quoting *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988)). Bad faith "turns on government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *Zaragoza-Moreira*, 780 F.3d at 977 (citations omitted); *see also United States v. Leal–Del Carmen*, 697 F.3d 964, 970 (9th Cir. 2012). "Potentially useful evidence" is defined as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. Second, the missing evidence must be "of such a nature that the defendant would be unable to obtain comparable evidence by other

reasonably available means." *Sivilla*, 714 F.3d at 1172 (quoting *Trombetta,* 467 U.S. at 489). The Defendant fails to establish either element.

### 2.     The Government Did Not Act in Bad Faith

As to the first element, the Defendant cites to *Zaragoza-Moreira* to argue the Footage was potentially useful and Government acted in bad faith when it failed to preserve it. (Doc. 163 at 5–7 citing 780 F.3d 971 (9th Cir. 2015)). Even assuming the Footage was potentially useful, the Defendant misapprehends *Zaragoza-Moreira* to argue bad faith. There, the Ninth Circuit found bad faith when the government agent "made no attempt to view or preserve the . . . video before it was destroyed" despite the defendant's request to do so. *Zaragoza-Moreira*, 780 F.3d at 980. By contrast, the Government and tribal law enforcement in this case represent they made two attempts to obtain the Footage to no avail. (Doc. 188 at 4). The Court is unconvinced that the Government acted in bad faith by doing so.

### 3.     There is Comparable Evidence Available

As to the second element, there is available evidence comparable to the evidence that would have been provided by the Footage. For example, at least Sanchez, Gomez, Juan, and Jones can testify to what happened during the Footage's timeframe as eyewitnesses. Sanchez's recollection of the events captured by the Footage was also recorded by Officer Boyd the day after Sanchez's interaction with Gomez. Moreover, both Sanchez and Officer Boyd both reviewed the Footage and can testify to its contents.

In sum, the Defendant has not demonstrated that the Government acted in bad faith in failing to preserve the potentially useful evidence, or that there are no reasonable means to obtain evidence comparable to the Footage. *See Cooper*, 983 F.2d at 931; *Sivilla*, 714 F.3d at 1172. The Defendant therefore has not met the high threshold required for dismissal of the indictment. *Id*.

### B.     Adverse Inference Jury Instruction

The Court will now consider the Defendant's request for special jury instructions. The Defendant urges the Court to deliver the following instruction on lost or destroyed

evidence:

> If you find that the government intentionally [destroyed] [failed to preserve] [insert description of evidence] that the government knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the government.

Model Crim. Jury Instr. 9th Cir. 3.19, Lost or Destroyed Evidence, (2023). The rule governing sanctions for destruction of evidence is set forth in Judge Anthony Kennedy's 6–5 concurrence in *U.S. v. Loud Hawk,* 628 F.2d 1139, 1151 (9th Cir.1979) (Kennedy, J., concurring). *Sivilla*, 714 F.3d at 1173. A jury instruction concerning evidence lost or destroyed by the Government is appropriate when the "balance [between] 'the quality of the Government's conduct' against 'the degree of prejudice to the accused'" weighs in the Defendant's favor. *Id.* (internal citation omitted).

### 1. The Quality of the Government's Conduct

When evaluating the Government's conduct, courts should consider the following inquiries

- whether the evidence was lost or destroyed while in its custody;

- whether the Government acted in disregard for the interests of the accused;

- whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification; and

- whether the government attorneys prosecuting the case have participated in the events leading to loss or destruction of the evidence, for prosecutorial action may bear upon existence of a motive to harm the accused.

*Id.* (quoting *Loud Hawk,* 628 F.2d at 1152). "The Government bears the burden of justifying its conduct . . . ." *Id.*

The Defendant argues that, even if the Government did not act in bad faith, it acted negligently and in disregard of the Defendant's interest when it failed to preserve the

- 5 -

Footage and allowed it to be destroyed. (Doc. 163 at 7–8). But the Defendant has not demonstrated that the Footage was ever in the Government's custody to mismanage. As discussed, the Government made multiple good faith attempts to obtain the Footage. (*See infra* Section II.(2)). The Government's failure to obtain the Footage was not intentional, reckless, or negligent. The Footage was lost because it was destroyed during the course of Circle K's surveillance practices.

The Court therefore finds the Government has met its burden in justifying its conduct.

### 2. The Degree of Prejudice to the Defendant

When evaluating potential prejudice to the Defendant, courts should consider a "wide number" of factors, including, but not limited to:

- the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant;

- the probative value and reliability of the secondary or substitute evidence;

- the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; and

- the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence.

*Sivilla*, 714 F.3d at 1173–74 (quoting *Loud Hawk,* 628 F.2d at 1152). *Id*. The Defendant bears the burden of of demonstrating prejudice." *Id*.

The Defendant argues loss of the Footage is more prejudicial to him because it could have been used to negate his liability. (Doc. 163 at 6). He says the Footage did not definitively show he was at the gas station on December 10, 2019, and only depicted Jones, Juan, Gomez, and an unidentified person. (*Id*.) He further represents, without citing to the record, that Pina County Medical Examiner ("PCME") Suzi Dodt's report reflects that

Dodt "was told by Detective Cable Johnson of GRPD that at the time of the homicide, the deceased had been in a truck with the perpetrator and *three other females*." (*Id*. at 4). Thus, the Defendant reasons that he could have used the Footage to show that Jones was in fact the perpetrator, not him. (*Id*. at 6). However, any exculpatory value provided by the Footage to the Defendant is highly speculative and based primarily on inadmissible hearsay by PCME Dodt. The Court thus finds that the Defendant has failed to meet his burden in showing prejudice due to loss of the Footage.

Instead, the Court finds that loss of the Footage is more prejudicial to the Government because it would corroborate the Government's narrative: a witness to the murder committed by the Defendant was trying to flee from the Defendant. The Footage would also substantiate Gomez and Sanchez's recollection, who are both Government witnesses.

Under the *Loud Hawk* test, sanctions for destruction of evidence are not warranted in this case because the Government's good faith efforts to obtain the Footage is justified and outweighs the lack of prejudice posed to the Defendant. The Court declines to permit the Defendant's proposed jury instruction because it does not adequately describe the Government's conduct.

Accordingly,

**IT IS ORDERED** that Defendant Fernando Ray White's "Motion to Dismiss Indictment or, in the Alternative, for a Lost or Destroyed Evidence Jury Instruction" (Doc. 163) is **DENIED**.

Dated this 26th day of May, 2023.

Honorable Diane J. Humetewa
United States District Judge